IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BROADCAST MUSIC, INC., *et al.*,

           Plaintiffs,

     vs.                            Civil Action 2:11-CV-1064
                                   Magistrate Judge King

DK 547, LLC, *et al.*,

           Defendants.

## OPINION AND ORDER

This is an action for copyright infringement under 17 U.S.C. § 101 *et seq.*, in which plaintiffs allege that defendants DK 547, LLC and Dimo Kuzmanovski ("Kuzmanovski") performed or caused to be performed nine (9) copyrighted musical compositions at Classics Sports Bar – S High St. ("Classics Sports Bar"), in Columbus, Ohio, without license or authority. This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiffs' Motion for Summary Judgm*ent ("*Plaintiffs' Motion*"), Doc. No. 18. *Plaintiffs' Motion* seeks injunctive relief, $45,000 in statutory damages, and reasonable attorneys' fees and costs. Defendants, who are represented by counsel who have been expressly advised by the Court of the consequences of their failure to respond to the motion, *Order*, Doc. No. 20, have nevertheless filed no response to *Plaintiffs' Motion*.

For the reasons that follow, *Plaintiffs' Motion* is **GRANTED**.

I.    **Background**

Plaintiff Broadcast Music, Inc. ("BMI") possesses the right to license the public performances of numerous copyrighted musical compositions owned by each of the fifteen other plaintiffs in this action. *Declaration of Renee S. Wolfe* ("*Wolfe Declaration*"), Doc. No. 18-1, ¶ 2. BMI alleges that defendants performed or caused to be performed nine (9) copyrighted compositions at Classics Sports Bar in Columbus, Ohio, on October 2 and 3, 2010 and March 17, 2011. Defendant DK 547, LLC is the legal entity that owns or controls Classics Sports Bar. *Defendants' Responses to Plaintiffs' First Set of Interrogatories to Defendants,* Doc. No. 18-17, p. 3. Kuzmanovski is the sole owner of DK 547, LLC. *Id*.

On the evening of October 2, 2010, in the early morning of October 3, 2010, and on March 17, 2010, defendant DK 547, LLC, operated, maintained, had the right and ability to direct and control the activities of, and had a direct financial interest in Classics Sports Bar. *Defendants' Responses to Plaintiffs' First Request for Admissions to Defendants*, Doc. No. 18-17, pp. 12, 14-15; *Defendant's* [sic] *Amended Response to Plaintiff's* [sic] *Request to Admit*, Doc. No. 18-18, p. 1. Kuzmanovski held a financial interest in Classic Sports Bar and, as the owner, had the "ability to direct the activities of" and to "supervise the persons employed at Classic Sports Bar" on those dates. *Id.* However, Kuzmanovski denies having "direct control over the activities of" and "having the ability to supervise the persons employed" by Classic Sports Bar because he was not present at Classic

Sports Bar on the relevant dates. *Defendant's* [sic] *Amended Response to Plaintiff's* [sic] *Request to Admit*, pp. 1-2.

Sometime prior to July 2009, BMI learned that defendants were offering musical entertainment at Classic Sports Bar without a BMI license. *Declaration of Lawrence E. Stevens* ("*Stevens Declaration*"), Doc. No. 18-11, ¶ 3. On July 10, 2009, BMI sent a letter to Kuzmanovski at Classics Sports Bar advising that a license was required to publically perform copyrighted music and offering a license to publicly perform BMI affiliated music. *Letter Dated July 10, 2009,* Doc. No. 18-14, p. 1. From October 8, 2009 through March 18, 2010, BMI sent approximately seven letters to defendants informing them that a license was required to publicly perform BMI copyrighted musical works. *Stevens Declaration*, ¶¶ 3-5; *Letters,* Doc. No. 18-14, pp. 3-10. In much of the correspondence, plaintiffs offered terms of a license that would authorize the public performance of BMI's music at Classics Sports Bar. *See Stevens Declaration*, ¶¶ 3-5. Letters sent on May 3, June 30, July 19 and September 20, 2010 and on January 17 and on March 4, 2011 directed defendants to cease and desist all use of BMI licensed music at Classics Sports Bar. *Id*. at ¶¶ 3-6; *Letters,* Doc. No. 18-14, pp. 12-20. A letter dated July 1, 2010 notified defendants that a BMI music researcher had visited Classic Sports Bar and had confirmed that defendants were "publicly performing music which would require a public performance license." *Letter Dated July 1, 2010,* Doc. No. 18-14, p. 15.

In addition to the letters sent to defendants, BMI's licensing personnel telephoned Classics Sports Bar on twenty-nine (29) occasions.  *Stevens Declaration*, ¶ 8.

Defendants did not respond to plaintiffs' letters, *see id*. at ¶¶ 3, 5; *Letters,* Doc. No. 18-14, pp. 12-24, and at no time have defendants entered into a licensing agreement with BMI.  *Stevens Declaration*, ¶ 9.

On October 2, 2010, plaintiffs sent an investigator, Scott Farkas, to Classics Sports Bar to make an audio recording and written report of the music being publicly performed at that establishment. *Id*. at ¶ 10.  According to plaintiffs, that investigation revealed that defendants publicly performed five BMI copyrighted works on the evening of October 2, 2010 and in the early morning hours of October 3, 2010.  *Id*.; *Certified Infringement Report*, Doc. No. 18-13.

On March 17, 2011, plaintiffs sent a second investigator, Robert Allman, to Classics Sports Bar to make an audio recording and written report of the music being publicly performed at that establishment. *Stevens Declaration*, ¶ 12.  According to plaintiffs, that investigation revealed that defendants publicly performed six BMI copyrighted compositions on March 17, 2011.  *Id*.; *Certified Infringement Report*, Doc. No. 19.  In a letter dated April 25, 2011, plaintiffs advised defendants of the results of their investigation and offered to resolve the matter by entering into a license agreement in exchange for payment of outstanding licensing fees and costs of the investigation in the amount of $11,613.12.  *Letter Dated April 25, 2011*, Doc. No. 18-14, p. 21; *Stevens Declaration*, ¶ 13.

According to Lawrence E. Stevens, Assistant Vice President of General Licensing for BMI,

> [h]ad the [d]efendants entered into an agreement at the time BMI first contacted them in July 2009, the blanket license fees from July 1, 2009 through June 30, 2010 would have been approximately $4,617.00; the blanket license fees from July 1, 2010 through June 30, 2011 would have been approximately $4,779.00; the blanket license fees from July 1, 2011 through June 30, 2012 would have been approximately $4,779.00; and the blanket license fees for the year commencing July 1, 2012 would have been approximately 4,833.00.

*Stevens Declaration*, ¶ 18.

*Plaintiffs' Motion* seeks an injunction against further infringement, statutory damages in the amount of $5,000.00 for each of the nine alleged copyright infringements, costs and attorney's fees and interest on the judgment.

## II.  Standard

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id*.  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the

5

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**III. Discussion**

As noted *supra*, defendants have not responded to *Plaintiffs' Motion;* the facts stated in the affidavits and other papers submitted

in support of *Plaintiffs' Motion* will therefore be accepted as true by the Court. *See* Fed. R. Civ. P. 56(e).

### A. Infringement

> To establish a claim for copyright infringement of a musical work by means of public performance, a claimant must prove: (1) the originality and authorship of a composition; (2) a valid copyright under the formalities of the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance.

*Jobete Music Co., Inc. v. Johnson Communc'ns, Inc.*, 285 F.Supp.2d 1077, 1082 (S.D. Ohio 2003) (citing *Varry White Music. V. Banana Joe's of Akron, Inc.*, No. 5:01CV1074, 2002 WL 32026609 (N.D. Ohio Oct. 28, 2002)). *See also Superhype Pub., Inc. v. Vasiliou*, 838 F.Supp. 1220, 1224 (S.D. Ohio 1993).

Plaintiffs have submitted the declaration of Renee Wolfe, a BMI attorney, to establish the first three elements of their claim. *Wolfe Declaration*, Doc. No. 18-1. Ms. Wolfe's declaration references the *Schedule* attached as Exhibit A to the *Complaint*, which lists the musical works allegedly infringed and the registration dates and numbers for each; the *Wolfe Declaration* also attaches registration certificates issued by the United States Copyright Office for the musical works as well as documentation relating to the chain of ownership of each copyrighted work. *See Wolfe Declaration*, ¶ 4 and attachments (Doc. Nos. 18-1 – 18-10). Defendants have not controverted this evidence, nor have they otherwise created a genuine issue of material fact regarding plaintiffs' ownership of valid copyrights in the songs at issue in this litigation. Plaintiffs have

therefore established their ownership of valid copyrights in the nine songs allegedly infringed. *See* 17 U.S.C. § 410(c).

As to the fourth element, *i.e.,* the defendants' public performance of the copyrighted works, plaintiffs have submitted two "*Certified Infringement Report[s]*" as evidence of that element. *Certified Infringement Report*, Doc. No. 18-12; *Certified Infringement Report*, Doc. No. 19. The *Certified Infringement Reports* were prepared by Scott Farkas and Robert Allman, who visited Classics Sports Bar on October 2 and 3, 2010 and on March 17, 2011, respectively, and who documented that BMI works were publicly performed at that establishment on those dates. *Certified Infringement Report*, Doc. No. 18-12; *Certified Infringement Report*, Doc. No. 19; *Stevens Declaration*, ¶¶ 10, 12. Again, defendants have presented no contradictory evidence. The Court therefore concludes that the "public performance" element of plaintiffs' claims has been satisfied.

Finally, defendants did not have a BMI license to publicly perform the copyrighted music on October 2, 2010, October 3, 2010, or March 17, 2011. *See Stevens Declaration*, ¶ 4; *Defendants' Responses to Plaintiffs' First Request for Admissions to Defendants*, Doc. No. 18-17, p. 20. The Court therefore expressly finds that defendants lacked plaintiffs' permission to perform BMI copyrighted music.

Accordingly, there is no genuine issue of material fact regarding plaintiffs' copyright infringement claims and plaintiffs are entitled to judgment as a matter of law on those claims.

**B.  Liability**

Having concluded that plaintiffs established unlawful infringement, the Court now turns to the issue of defendants' liability.  Plaintiffs argue that DK 547, LLC and Kuzmanovski are jointly and severally liable for infringement at Classics Sports Bar. *Plaintiffs' Motion*, pp. 7-9.

In *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), the United States Supreme Court observed that

> [t]he Copyright Act does not expressly render anyone liable for infringement committed by another. . . .  [However,] vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.

*Id*. at 434-435.  Accordingly, DK 547, LLC, as the entity that operated, maintained, had a direct financial interest in, and had the right and ability to direct and control the activities of Classics Sports Bar on October 2 and 3, 2010 and on March 17, 2011, is liable for the infringement regardless of whether it had actual knowledge of the music played on those dates.  *See Broadcast Music, Inc. v. Branham*, No. C-1-80-124, 1982 WL 1271, at *2 (S.D. Ohio July 8, 1982) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) ("The entrepreneur who sponsors such a public performance for profit is also an infringer . . . .")).

Defendant Kuzmanovski is the president and owner of DK 547, LLC. "Courts within virtually every circuit, including the Sixth Circuit, have adopted a two-prong test to determine whether a corporate officer is jointly and severally liable with the corporation for copyright

infringement." *Broadcast Music, Inc. v. Rooster's Inc.*, No. 04-140-DLB, 2006 WL 335583, at *3 (E.D. Ky. Feb. 14, 2006) (citing *Jobete Music Co.*, 285 F.Supp.2d at 1083). *See also Broadcast Music, Inc. v. H.S.I., Inc.*, No. C2-06-482, 2007 WL 4207901, at *3 (S.D. Ohio Nov. 26, 2007) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

> [F]or a corporate officer to be vicariously liable, he must possess: (1) the right and ability to supervise the infringing activity, and (2) a direct financial interest in such activities.  Thus, under this standard, liability for copyright infringement is not limited to those individuals who directly engage in infringing activity.

*Rooster's Inc.*, 2006 WL 335583, at *3 (citing *Jobete Music Co.*, 285 F.Supp.2d at 1083).

Defendant Kuzmanovski has admitted that he held a financial interest in Classic Sports Bar and that, as the owner, he had the "ability to direct the activities of" and to "supervise the persons employed at Classic Sports Bar" on the evening of October 2, 2010, in the early morning hours of October 3, 2010, and on March 17, 2010.  It is of no legal consequence that he was not present at Classic Sports Bar when the alleged infringements occurred.  *See Broadcast Music, Inc. v. Nolan Enters., Inc.*, No. 2:11-cv-705, 2013 WL 143370, at *3 (S.D. Ohio Jan. 11, 2013).  Defendant Kuzmanovski is therefore also vicariously liable for the infringement of plaintiffs' copyrights on those dates.

C.   **Injunctive Relief**

Plaintiffs ask that the Court enjoin defendants from further unauthorized public performances of BMI's copyrighted music. The Copyright Act authorizes temporary or final injunctive relief as a

10

remedy for infringement "on such terms as [the court] may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). It is well established "that a showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction." *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007) (citations and quotations omitted). "Not only is the issuance of a permanent injunction justified 'when a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction.'" *Id.* (emphasis in original) (quoting *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990)). Otherwise, awarding damages without injunctive relief would amount to a "'forced license to use the creative work of another.'" *Id.* (quoting *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004)).

In the case presently before the Court, plaintiffs have established past infringement by defendants. Further, defendants have persistently disregarded plaintiffs' invocation of their rights and of plaintiffs' offer to license their copyrighted works. Under these circumstances, the Court concludes that plaintiffs have established a substantial likelihood of future infringement by defendants. *See Broadcast Music, Inc. v. Pub Dayton, LLC*, No. 3:11-cv-58, 2011 WL 2118228, at *2-3 (S.D. Ohio May 27, 2011).

Accordingly, plaintiffs are entitled to an injunction enjoining defendants from publicly performing BMI's copyrighted music without a license.

**D.    Statutory Damages**

Plaintiffs also seek statutory damages of $5,000 for each of the nine claimed infringements.  The Copyright Act permits an award of statutory damages in lieu of actual damages attributable to the infringement.  17 U.S.C. § 504(a)-(c).  Statutory damages for each individual act of infringement ordinarily ranges from $750 to $30,000.  17 U.S.C. § 504(c)(1).  Where the copyright owner establishes willful infringement, however, the Court may increase the award of statutory damages to $150,000 per infringement.  17 U.S.C. § 504(c)(2).  "The Court has substantial discretion to set statutory damages within the permitted range, but it is not without guidance."  *H.S.I., Inc.*, 2007 WL 4207901 at *4 (citing *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935)).  When determining the proper amount of statutory damages, "'courts have looked to: (1) whether [d]efendants' infringement was willful, knowing, or innocent; (2) [d]efendants' profit from infringement; (3) [p]laintiffs' loss from infringement; and (4) deterring future violations by [d]efendants and similarly situated entities.'"  *Broadcast Music, Inc. v. 4737 Dixie Highway, LLC*, No. 1:12-cv-506, 2012 WL 4794052, at *4 (S.D. Ohio Oct. 9, 2012) (quoting *H.S.I., Inc.*, 2007 WL 4207901 at *6).

In an action for copyright infringement,

> "willfully" means with knowledge that the defendant's conduct constitutes copyright infringement.  Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent.  This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not "willful" for these purposes.

12

*Princeton Univ. Press v. Mich. Document Serv., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (citations omitted).

This is a case of willful infringement.  Beginning in July 2009, BMI sent defendants approximately fourteen letters and called Classics Sports Bar 29 times demanding that defendants secure a license in order to lawfully perform BMI's copyrighted music.  BMI also directed defendants on multiple occasions to cease and desist all use of BMI licensed music at Classics Sports Bar.  Defendants' receipt of these communications before the date of the claimed infringements demonstrates that each infringement was in fact willful.  *See 4737 Dixie Highway, LLC*, 2012 WL 4794052 at *3; *H.S.I., Inc.*, 2007 WL 4207901 at *5; *Broadcast Music, Inc. v. Leyland Co., LLC*, No. 5:11CV2264, 2012 WL 5879838, at *9 (N.D. Ohio Nov. 21, 2012); *Pub Dayton, LLC*, 2011 WL 2118228 at *3.

With regard to profits and losses associated with the infringements, plaintiffs have established more than $15,000 in lost licensing fees from July 1, 2009 to the present.  The Court concludes that this amount sufficiently establishes defendants' costs savings as well as plaintiffs' loss.  *See 4737 Dixie Highway, LLC*, 2012 WL 4794052 at *3; *Pub Dayton, LLC*, 2011 WL 2118228 at *3-4.

As to the amount of the award, "'in the narrow class of cases dealing with willful, unauthorized, musical performances in public establishments, the damages awards range from two times the licensing fee to five times the licensing fee.'"  *4737 Dixie Highway, LLC*, 2012 WL 4794052 at *4 (quoting *Broadcast Music, Inc. v. DeGallo, Inc.*, 872 F.Supp. 167, 169 (D.N.J. 1995)).  "In fact, cases within this Circuit

13

have recognized that the method of awarding statutory damages based 'on some multiple of unpaid fees is more appropriate than measuring damages by the number of infringements.'" *Id.* (quoting *H.S.I., Inc.*, 2007 WL 4207901 at *6 (awarding "statutory damages of three times the unpaid fees")).

Plaintiffs' request for statutory damages of $5,000 per infringement, for a total award of $45,000, is less than three times the amount of plaintiffs' lost licensing fees. The Court concludes that this amount is reasonable under the circumstances. "If the Copyright Act is 'to have any effect, judgment against defendant[s] must be appreciably more than the amount [they] would have had to expend to obtain appropriate permission.'" *H.S.I., Inc.*, 2007 WL 4207901 at *6 (quoting *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D. Va. 1985)). "Defendants 'should be put on notice that it costs less to obey the copyright laws than to violate them.'" *Id.* (quoting *Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889, 892 (W.D. Pa. 1985)). Defendants had actual notice for more than a year that their public performance of BMI-licensed music without license or permission constitutes copyright infringement. Defendants nevertheless refused to secure a license.

Accordingly, the Court concludes that statutory damages in the amount of $45,000, which constitutes an award of $5,000 for each of the nine claimed infringements, properly accounts for defendants' gain, plaintiffs' loss, and the interest of the Copyright Act in deterring future violations.

**E.    Attorneys' Fees and Costs**

Finally, plaintiffs seek an award of reasonable attorneys' fees and costs.  The Court is vested with the discretion to award fees to the prevailing party in a copyright infringement action.  17 U.S.C. § 505.  The United States Court of Appeals for the Sixth Circuit has identified a series of factors to consider in determining whether to award attorney fees, including such factors as "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 589 (6th Cir. 2007) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'"  *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004)).

In the case presently before the Court, defendants willfully infringed plaintiffs' statutory rights despite numerous warnings that a license was required in order to publicly perform BMI works. Accordingly, plaintiffs are entitled to an award of their reasonable attorneys' fees and costs.

"It is well settled law that the 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees."  *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citing

15

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478
U.S. 546, 563 (1986)).  The lodestar approach multiplies the number of
hours reasonably spent by a reasonable hourly rate.  *Id*. (quoting
*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  There is a "strong
presumption" that this figure is a reasonable fee.  *Id*. (quoting
*Delaware Valley*, 478 U.S. at 565).

The *Declaration of Ronald H. Isroff* ("*Isroff Declaration*"), Doc.
No. 18-15, itemizes attorneys' fees in the amount of $10,681.00[1] and
costs in the amount of $350.00, for a total of $11,031.00.  *Isroff
Declaration*, pp. 2-11.  According to the *Isroff Declaration*, attorney
Ronald Isroff charged an hourly rate in 2011, 2012 and 2013 of $455,
$470, and $480, respectively, and attorney Christine E. Watchorn
charged an hourly rate of $280, $305 and $320 in 2011, 2012 and 2013,
respectively.  *Id*. at ¶ 9.  The *Isroff Declaration* avers that these
fees and costs were

> reasonable and necessary to advance [p]laintiffs' interest
> in this matter given the level of experience of the
> lawyers, the time and labor required in light of the fees
> customarily charged in this locality for similar legal
> services.

*Id*. at ¶ 10.  Again, defendants offer no contradictory evidence.  The
Court therefore concludes that plaintiffs are entitled to attorneys'
fees and costs, pursuant to 17 U.S.C. § 505, in the amount of
$11,031.00.

---

[1] $10,681 represents the total amount billed by attorneys Ronald Isroff and
Christine Watchorn.  *Isroff Declaration*, pp. 2-11.  Attorney Isroff billed
$3,032 for 1.8 hours in 2011, 4.3 hours in 2012 and 0.40 hours in 2013.  *Id*.
Attorney Watchorn billed $7,649.00 for 1.90 hours in 2011, 22.60 in 2012 and
0.70 hours in 2013.  *Id*.

**WHEREUPON**, and based on the foregoing, *Plaintiffs' Motion for Summary Judgm*ent, Doc. No. 18, is **GRANTED**.

Defendants DK 547, LLC, and Dimo Kuzmanovski are **PERMANENTLY ENJOINED** from publicly performing BMI's copyrighted music without a license.

Plaintiffs are **AWARDED** statutory damages from defendants DK 547, LLC, and Dimo Kuzmanovski in the amount of $45,000.

Plaintiffs are **AWARDED** attorneys' fees and costs from defendants DK 547, LLC, and Dimo Kuzmanovski in the amount of $11,031.00.

The Clerk shall enter **FINAL JUDGMENT** in favor of plaintiffs and against defendants DK 547, LLC, and Dimo Kuzmanovski.


April 15, 2013                    *s/Norah McCann King*
                                  Norah M$^{c}$Cann King
                                  United States Magistrate Judge